People v Adamo (2019 NY Slip Op 05813)





People v Adamo


2019 NY Slip Op 05813


Decided on July 25, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 25, 2019

109964

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JOSEPH J. ADAMO JR., Appellant.

Calendar Date: May 3, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Rumsey, JJ.


Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Mary Pat Donnelly, District Attorney, Troy (Jacob B. Sher of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal, by permission, from an order of the County Court of Rensselaer County (Young, J.), entered December 8, 2017, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of attempted murder in the second degree, without a hearing.
On the morning of March 17, 2014, defendant — who had been staying outside the marital home due to an ongoing disagreement with his wife about how to address his worsening mental health issues — drove to the marital home and stabbed his wife 31 times with a kitchen knife. Defendant's father arrived on the scene shortly after the attack and sought medical and police intervention. Defendant was subsequently arrested and, while in police custody, he confessed to the stabbing. In October 2014, defendant was indicted on charges of attempted murder in the second degree, assault in the first degree (two counts), assault in the second degree and criminal possession of a weapon in the fourth degree.
On January 13, 2015, defendant appeared in County Court to enter into a plea agreement wherein he would plead guilty to attempted murder in the second degree and waive his right to appeal in exchange for a prison sentence of 18 years, followed by five years of postrelease supervision. However, when County Court inquired — during the course of the plea colloquy — as to whether "anyone [had] threatened, coerced or forced [him] in any way into pleading guilty and waiving [his] rights," defendant responded in the affirmative. After County Court afforded him time to speak with his attorney off the record,[FN1] defendant — speaking for himself — asked for additional time to consider the offer. Defendant also stated to his attorney, "It is not your life." County Court then indicated that it would not be moving forward with a [*2]guilty plea that day, at which point defense counsel immediately expressed his intention to make a formal motion to withdraw as counsel.
Three days later, still represented by the same attorney, defendant once again appeared in County Court ready to enter into the plea agreement. After indicating that he had not been threatened, coerced or forced into the plea agreement, defendant pleaded guilty to attempted murder in the second degree and waived his right to appeal, orally and in writing. However, there was no discussion on the record as to what had changed in the three days since defendant had last appeared in County Court. Immediately following defendant's guilty plea, County Court sentenced defendant, in accordance with the plea agreement, to 18 years in prison, followed by five years of postrelease supervision.[FN2]
In July 2017, defendant moved, pursuant to CPL 440.10 (1) (e), (g-1) and (h), to vacate the judgment of conviction on the basis that, among other things, he had not knowingly, voluntarily and intelligently entered his guilty plea and he had received ineffective assistance of counsel. County Court denied the motion without a hearing. Defendant appeals, by permission, from the order denying his motion.
We agree with defendant that County Court should have conducted a hearing to determine whether he was entitled to vacatur of the judgment of conviction under CPL 440.10 (1) (e) and/or (h). Defendant submitted evidence that, at the time of the crime and at the time that he pleaded guilty, he was suffering from mental health issues and had been prescribed various antidepressants and antipsychotic medications. Defendant produced two expert affidavits to establish that, based upon testing of his DNA, he has a genetic deficiency that negatively affects his ability to metabolize antidepressants and antipsychotic medications and that such metabolic deficiency has been scientifically linked to increased rates of drug-induced psychiatric symptoms, including "increased states of psychosis, depression, agitation, violence and suicide." Defendant also presented proof that, before and after his guilty plea, he continued to suffer from documented mental health issues, which his doctors attempted to treat with changing dosages and complements of prescription medications. However, the Rensselaer County Jail produced few records from at or around the time of defendant's plea on January 16, 2015, and one of defendant's experts stated that jail records from the six weeks preceding defendant's transfer to the custody of the State Office of Mental Health on January 26, 2015 were unavailable to her. Given the evidence of defendant's metabolic deficiency and the ongoing efforts to chemically treat his mental health issues before and after his guilty plea, further development of the record is required to determine whether defendant's mental capacity was impaired at the time of his plea and, if so, whether he was able to knowingly, voluntarily and intelligently plead guilty to attempted murder in the second degree (see People v Hennessey, 111 AD3d 1166, 1167-1169 [2013]).
Defendant's submissions also raise questions as to whether interactions between defendant and defense counsel impacted upon defendant's ability to knowingly, voluntarily and intelligently enter into the plea agreement. Defendant's proof revealed that a psychiatrist determined in May 2014 that defendant suffered from "diminished capacity," that defense counsel was well aware of defendant's mental health issues and that defendant's father and sister had forwarded defense counsel numerous articles regarding drug-induced violence. Nonetheless, according to defendant's sister and father, and as evidenced by a December 2014 letter written by defense counsel to defendant, defense counsel stated to defendant on multiple occasions that he had "absolutely no defense" to the charged crimes. In our view, defendant's submissions demonstrate the need for further development of the record regarding off-the-record conversations that took place between defendant and defense counsel regarding defendant's case [*3]and possible defenses,[FN3] so as to discern whether defendant knowingly, voluntarily and intelligently waived any potential defenses, including an involuntary intoxication defense or the defense of not responsible by reason of mental disease or defect (see People v Perry, 148 AD3d 1423, 1424-1425 [2017]; cf. People v Hall, 138 AD3d 1407, 1407-1408 [2016]).
In addition, the December 2014 letter, together with the occurrences and statements made during the January 13, 2015 and January 16, 2015 proceedings, raise questions as to whether defendant's guilty plea was voluntary and not coerced (see People v Rapp, 133 AD3d 979, 980-981 [2015]; see generally People v Di Donato, 263 AD2d 677, 679 [1999], lv denied 94 NY2d 798 [1999]). In that letter, defense counsel stated, among other things, that, should defendant refuse to plead guilty, he would no longer agree to represent defendant and, in attempting to dissuade defendant from proceeding to trial, invoked the potential disgrace to his family. Accordingly, as defendant's submissions demonstrate the existence of material, nonrecord facts that, if established, would entitle him to vacatur of the judgment of conviction under CPL 440.10 (1) (e) and/or (h) (see CPL 440.30 [5]), we remit the matter for a hearing on those grounds.
We, however, agree with County Court that CPL 440.10 (1) (g-1) is inapplicable. Under that provision, a court may vacate a judgment of conviction entered upon a guilty plea if forensic DNA testing of evidence demonstrates "a substantial probability that the defendant was actually innocent of the offense of which he or she was convicted" (CPL 440.10 [1] [g-1]). The DNA testing performed here demonstrated that defendant has a genetic deficiency that negatively affects his ability to metabolize antidepressants and antipsychotic medications, which, at most, would lend itself to establishing his involuntary intoxication during the offense (see e.g. Penal Law § 15.25; People v Harris, 98 NY2d 452, 474-475 [2002]); it does not establish defendant's actual innocence of the underlying crime. Thus, the hearing required upon remittal need not address whether the judgment of conviction must be vacated under CPL 440.10 (1) (g-1). Finally, although defendant asks this Court to remit the matter to a different judge, we see no reason to do so on this record.
Garry, P.J., Egan Jr., Lynch and Rumsey, JJ., concur.
ORDERED that the order is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a hearing on defendant's CPL article 440 motion.



Footnotes

Footnote 1: County Court had also granted defendant time to speak with his attorney earlier in the plea colloquy, when he had equivocated as to whether the plea agreement was in his best interest.

Footnote 2: This Court denied defendant's motion, made pursuant to CPL 460.30, for an extension of time to take an appeal from the judgment of conviction (2015 NY Slip Op 83559[U]).

Footnote 3: Defendant's sister avers in an affidavit that she implored defense counsel during a break in the January 13, 2015 attempted plea proceeding to request a court-ordered psychiatric evaluation. There is no explanation in the record as to why this did not occur.